3230367 consolidated with 3230382 and 3230442 Catherine Paterno as personal representative executor under the last will and testament of Philip Kardasz and as co-trustee and on behalf of the Philip Kardasz Living Trust Appellant v. Betty K. Seamer's Day Kardasz, Deborah Roper, Karen Mills, and Gary Hollander, Catherine Clancy, Adventist Midwest Health, and Joanne Donahue Appellees. All right. The clerk was kind enough to work with everybody about modifications to our time frames. What the clerk decided was fair will stand. And with that, Ms. Paterno, if you're ready, you may proceed. Good morning, your honors. May it please the court. My name is Catherine Kardasz Paterno. I'm the daughter of Philip Kardasz. And I'm here to represent his interest, his trust interest, as well as my siblings, the Kardasz beneficiaries. The first issue was the 304B1 appeal of dismissal of counterclaims one and two are statutory claims under the wrongful death act. And under the elder abuse statute, 740 ILCS 180, in particular, section 2.1 and 720 ILCS 5-17-56, subsection G. I am under his last testament and will dated October 1st of 2006. His personal representative along with my stepmother, Betty K Kardasz. I'm also his co-trustee under his 2006 trust that was amended and restated again in 2018. And as such, under the wrongful death act, I have standing section 2.1 does not apply. My father's trust had assets, and it was fully funded. The initial funding proceed provision. Why is that important, Ms. Paterno? Well, because section 2.1 says that the wrongful death action brought is the only asset of the estate. I'm here to tell you that his trust was the trust, not the estate. You're talking about the trust, right? Well, his will was a poor over will. So anything that didn't make it into the trust, which was restated and amended in 2008, 11, 15, and 18, was fully funded upon his death. And a poor over will is basically a tool for the personal representatives that are named. At the time of his death, I didn't understand who my stepmother was. I've only learned that and gathered the documents and evidence that have evidence to me what occurred in this case. I was a witness to the June 29, 2020 meeting that was orchestrated by Betty Carras without authority. And with Amita, I didn't know them as Adventists at the time, Amita St. Thomas Hospice. My father was on dialysis three times a week. He had just arrived home from dialysis. I was unaware that my stepmother had a meeting with Amita for an hour and a half gathering different Amita professionals, who at the time I didn't understand. And at that meeting, my father stated he was not going off dialysis. Ms. Paterno, we're talking about your appeal here, though. You can't be testifying for us. Yes. Yes, Your Honor. But in the event that as being the only personal representative, being a personal representative, and Betty K. Carras having an obvious conflict of interest, that I am standing to bring the lawsuit under both the wrongful death action and the elder abuse statute. As far as Amita goes, this is not a medical malpractice action. That contract should never have been executed. I'm going to interrupt you if I may, Ms. Paterno. I'm going to go back to what I think was the import of Justice Hedl's question initially. Counts one and two were dismissed without prejudice. And under our case law, dismissal without prejudice does not finally determine a right. And if it doesn't finally determine a right, we do not have jurisdiction, as I understand it, under 304B1. So how do you get around that procedural bar as it relates to our jurisdiction? Well, in this case, there's a long history of five and a half years and not even being at discovery. My question is a very specific question, and I would like you to address it. I will, Your Honor. I apologize. As I was saying, the fact that the judge stated that an open state had to be opened in order to proceed on the wrongful death claim, my position is that there needs not be, it's under 2.1, doesn't apply in this situation. Let's assume the judge was wrong. I'm talking about our jurisdiction because he did not dismiss those counts with prejudice. So my question is, even if he's wrong, how do we have jurisdiction at this juncture given the fact that the counts were not dismissed with prejudice? Because it's still determinative of the party's rights in order to proceed. It's attached to the fraud and the remaining counterclaims which stood because it was subject to a motion to dismiss. Would you agree that that position is inconsistent with the state of the law as it relates to what constitutes a final judgment? My position is that under these set of circumstances that are very unique, the situation is that we should be allowed to proceed because it's attached to all the other counterclaims that are currently pending and that we need a justice. It affects our ability to recover and what is recoverable with the remaining counterclaims that exist against Betty Cardez at that time. So we believe that under 304B1 that it is determinative of the party's rights because it affects the ability to move forward. Should a finding be made on the other counterclaims that remained at that time, then we would still have to go back to court in order to file another action for the wrongful death claim because she could still claim parts of my father's estate even though she had revoked the reciprocal trust. So our position as under 304B1 still affects the administration of my father's trust and needs to be addressed by the court as a whole with the remaining counterclaims at that time. Does the record support the suggestion that there are assets that did not pour over that exceed a hundred thousand dollars? No, your honor. All right, thank you. In addition, because the account against Amita Adventist is not a malpractice action, it is in fact they knew for six months had pursued my father at the solicitation of my stepmother who had ulterior motives and because we now know that the 2017 deed dated August 24th was forged by her that she had financial motive. And so after pursuing Philip Cardoz from December 2019 where I was present and he rejected their services through June 29th of 2020 for which I was present and he again rejected their services, Joanne Donahue who's a third party defendant and an Amita allowed Betty K Cardoz to sign a contract in secret after the meeting had dispersed. So our position is that based in fraud there should have never been a contract to begin with and the fact that you can't coexist on a life-sustaining measure and a life-ending measure that that should have never happened and Joanne Donahue knew that Betty K had no authority. There was no health care power of attorney operative. My father was never declared at any point of his life ever declared to be incompetent, incapacitated. Ms. Paterno, what sort of action was it then? It was an action to aid in a bet Betty K Cardoz enabled to under that wrongful death action but for the fact that they allowed her to sign that contract my father in December 2019 for the meeting I was present for was given nine more years to live on dialysis and Betty Cardoz because she had received a risk of pension withdrawal liability letter was pursuing to get my father off dialysis which from 2017 to 2019 when we received that message. Your allegation is that Nurse Donahue aided and abetted Betty K Cardoz's actions in allowing her to sign that contract based in fraud knowing that Betty Cardoz not only did not have the authority to sign there was no power of attorney excuse me power of attorney operative and therefore she had no authority to sign that contract so our position is that the statutes governing malpractice and having a doctor required to sign off on it do not find this situation. Yes your honor. That was just a call. Okay may I proceed or yes in addition um the actions against attorneys Gary Hollander, Karen Mills, and Catherine Clancy um the attorney litigation privilege does not apply we're not talking um about a relationship an attorney-client relationship we're talking about it these three attorneys affirmative actions during litigation engaging in fraud in order to help Betty K Cardoz secure the fraudulent transfer of Philip Cardoz's trust 50 percent interest in 723 67th place. If you look at that deed that's exhibit U in the examiner's report which is exhibit W on page 40 of the third amended counterclaims and third party complaint you can actually see Betty K Cardoz's signature in Philip Cardoz's signature which is why it was submitted for examination and that deed transfers upon Philip's death if he died first his 50 percent interest to her and her descendants only so that was the catalyst for her soliciting Amita's um helping getting Philip off dialysis but that these three attorneys during litigation engaged in fraud to help her secure that the first being uh Gary Hollander had filed his motion to to dismiss on 13th um which contained an affidavit of Katie Clancy attaches exhibit B that stated April 5th of 2022 um which indicated to me after discovering Katie Clancy's billing in October 5th 2017 letter to Betty K Cardoz only stating it was nice wording working with Betty and her sons no Philip Cardoz on the billing no Philip Cardoz in the letter that Katie Clancy when she signed that affidavit then we knew that she was involved and she knew that Betty K Cardoz um didn't sign that or sign the deed on behalf of Philip Cardoz in that Miss Clancy's affidavit she states that went to 723 67th place to notarize a deed the date dated August 24th uh 2017 and what she omits is she prepared and notarized it in and recorded it but also she forgot that I lived next door to my father for 30 years at 733 67th place and if my father needed something notarized or if he was to sign a deed he would have certainly called me over but the other part about it in the motion to dismiss attorney Gary Hollander then takes Katie Clancy's um statements and intentionally materially misrepresents and changes every the facts about it and has my father and Betty K going to Katie Clancy's office to sign the deed on August 24th 2017 and and and he changed so many things about it that fraudulently intentionally materially misrepresented it in the motion to dismiss and when I have proven that the August 24th 2017 deed is in in fact forged Karen Mills submits to the court in writing that that the next deed that she accuses me of forging is not a forgery because she needs it to be good in order to use the Illinois Tenancy Act in order to still lay claim to Philip Cardoz's trust 50 percent interest in 723 67th place that had always gone to his descendants only since 1986 so that's why those three attorneys were then named as third party defendants for their actions and fraud to help Betty K Cardoz secure that are my father's trust 50 percent interest in 723 67th place is why they came up the statute of limitations argument then advanced by Miss Clancy's attorney is based on relation back to the August 24th 2017 deed but nobody knew that that deed was forged nobody knew until the accusations in this case came up the discovery of Miss Clancy's billing letter in June of 2022 that that in fact she was lying in her affidavit and when we produced that then you have two more you have Karen Mills then about the December 15th 2017 deed so all these things culminated that the statute of limitations clock there's no way we could have known nor would I accuse an attorney of that without actual proof that their statements then when she signs that affidavit to help Betty K Cardoz keep Phillips trust 50 percent interest then we knew that she took an affirmative act in furtherance of that fraud and forgery and is why she became a named party in this case last is Deborah Roper Deborah Roper is my sister who was bribed by Betty K Cardoz it's in the 9-1-1 tapes where these two individuals tried to have me falsely arrested eight times it's well documented it's actually attached to one of the filings as an exhibit that on February 16th of 2022 Deborah Roper's attorney my then new attorney was going to file an amended counterclaims a third party complaint that he omitted Debbie Deborah Roper from the complaint going back the initial filing of 21 MR 310 was merged into 20 MR 923 which is the case that this DuPage case on August 24th of 2021 the my then attorney was given leave to decide how to proceed and handle the case and he filed the first counterclaims and third party complaint on September 21st 2021 so the language that is in the transcript of February 16th of 2022 was written on page 7 by Deborah Roper's attorney and it says that making the provision applicable with the one filing that I could have one filing and I would be responsible for her filing fee when I undertook my own representation Deborah Roper was added back in with the second amended counterclaims on on June 17th of 2022 giving leave to file an amended pleading the third amended counterclaims a third party complaint Deborah Roper's remained in it there's never been a one filing there's never been a commencement of a new action her her the fact that she was missed was based on um judge uh um the judge being recently rotated into 20 MR 923 and not familiar with with the case so we went from a Judge Gibson to Judge Chapman back to Judge Gibson in the interim Judge Chapman didn't understand the entire history of the case when Deborah Roper was dismissed pursuant to 2619 thank you your honors thank you Miss Paterno you will or sorry uh Justice uh Heddle or Justice uh uh Bertani any questions no thank you all right Miss Paterno you will have an opportunity uh in reply uh and at this point my list is correct we're going to move to Mr. Feldman good morning your honors may it please the court my name is David Feldman and I'm appearing on behalf of the appellee Betty K Cardass who is the plaintiff and uh was the uh wife of the uh decedent uh if your honors the uh it's undisputed that under counts one and two wrongful death and financial uh elder abuse uh it has to be brought by uh the duly appointed executor uh or the independent administrator that was never done uh Justice uh Judge Chapman uh on the motion to dismiss said that there was no standing under um either statute and you cannot self-appoint which is what basically she was doing um and she she being Miss Paterno keeps pointing out that the will names her as and my client as the uh executor under the will but you can't not file the action you have to go to court and open up an for a wrongful death I cite a couple cases it's clear that uh the way Illinois law has been interpreted you have to open a wrongful death lawsuit in a probate in order to go through and file the separate usually it's a law division case for damages for wrongful death um and the same case I cited also applies to financial abuse and elder abuse the um your honor raised the issue with respect to the 304 b1 jurisdiction um in this case you know there was never a final order um Miss Paterno asked Judge Chapman to have a 304 a1 finding um and the judge denied it because there were uh underlying counts I think it was still it was a six count complaint against my the first two um were uh obviously uh allowed under 619 but the other four of the judge um allowed uh those to stay uh pending the case going forward so he denied 304 a1 and she brought brought it under 304 b1 but we really don't have a final order in it that's supposed to be as your this case it's not in the state because no one was ever open she never tried it's not a guardianship and it's not a similar proceeding the one case she saw it's in it's Russell has to do with the removal of a uh trustee to a trustee battle um but this was not uh what is before the court I mean she's trying to bring a separate cause of action for the wrongful death so I don't even think 304 b1 applies um so I don't believe the court is jurisdiction um and I also don't believe um that uh Justice Chapman did anything wrong in dismissing the case for not opening up appropriate state that's it thank you any questions for Mr. Feldman no no all right it looks like um um we move next to uh Mr. uh Maruna good morning justices and may it please the court James Maruna MARUNA on behalf of Appalooie third party defendant Debra Roper today we ask that this court affirm the circuit court's dismissal as to Miss Roper now the circuit court granted dismissal to Miss Roper on two alternative basis confirmation of either will affirm that dismissal today first the circuit court dismissed under section 13 217 because the appellant executed two voluntary dismissals of her claims against Miss Roper in this action second alternatively the circuit court dismissed under section 2603 because it had warned appellant that she needed to clean up the complaint and plead short concise understandable claims and she failed to do so now in her notice of appeal at opening brief the appellant only discussed one issue she wanted on appeal that was the 13 217 argument however as this court's review is under a de novo standard it can affirm the dismissal under any basis stated in the record 13 217 argument the 2603 argument or even the 2615 failure to state a claim arguments that were in the motion to dismiss but not ultimately a part of the court's dismissal decision again hitting on any of those allows affirmation of that dismissal and we believe all three are there turning to section 13 217 and this is the one that the appellant really focused on it's well established in Illinois that a plaintiff gets one voluntary dismissal and then after that the dismissal the second voluntary it's made with prejudice and that's what happened here on march 29th 2021 there was the initial action in the 310 matter plaintiff then dismissed that on october 21 28 2021 appellant refiled against roper and then on 216 22 through her attorney at that time dismissed that and that was in the 20 mr 923 action okay there's no debate the appellant's brief talks a lot about that this dismissal was made by her prior attorney and not with her consent that's a matter between them it has nothing to do with the actual limited scope of what we're talking about today and there's no debate that this was a clear dismissal the attorney's dismissal was unequivocal the attorney actually was the one who submitted the dismissal order for that and there were email communications in the record the day before discussing that that attorney agreed he was going to voluntarily dismiss the action the circuit court acted appropriately when this matter came back and saying you've had your two strikes we're done with this and again it was in the 310 action and the 923 action appellants arguments on this point are unpersuasive first she talks about again the scope of the attorney nothing to do with it it was done there as to the argument of acquiescence couldn't be further from the truth the record shows that every instance miss roper was fighting this case coming back there was never any acquiescence to it and last as to the argument that section 1009 doesn't apply retroactively that that's just the procedural vehicle for voluntarily dismissing an action an action's either getting dismissed voluntarily or involuntarily and if you're taking a voluntary it's 1009 retroactive nothing to do with it it was clearly a voluntary in the record so we believe that section 13 217 was a proper basis for dismissal it should be affirmed on that however if this court disagrees let's turn to 2603 the circuit court alternatively dismissed the 2603 under 2603 rather because miss roper or miss paterno failed to state a short concise basis for the claim um but brief goes into it in detail and i apologize there's going to be math involved in this part but essentially we're looking at a 46 page long complaint that inside each paragraph sub-references different sections now we see it for example in one paragraph there are 84 separate paragraphs reincorporated into it and there's case law in illinois rubino versus circuit city uh which is the first district 2001 that confirms you can't even do 12 let alone 84 the circuit judge gave a warning and said clean it up the appellant didn't do it upon no cleanup dismissed and last under 2615 briefly this court could also dismiss on that affirmed dismissal on that basis fraudulent misrepresentation doesn't work in the personal context it only works in the business context and so therefore because there's no underlying tort you can't have aiding abetting or civil conspiracy to commit a non-existent underlying tort that's my time thank you very much we ask that you affirm dismissal any questions for mr maruna none for me thank you um and at this point we'll move on to ms weiler good morning your honors may i please the court katherine weiler on behalf of third-party defendant appellees karen mills and gary hollander just to reset a tiny bit because i realize there are a lot of moving parts in this appeal uh ms mills and mr hollander represented various um ms cardez and members of her family in in the litigation that's pending in the trial court they are active attorneys in this litigation and that's important for the court to be reminded of because that's why the attorney litigation privilege applies to preclude uh ms paterna from bringing her claims against them this case is exactly why the attorney litigation privilege exists without a dissatisfied litigants would be able to try to continue their claims or seek alternative forms by suing the lawyers involved not just the litigants and in this particular case even today during today's hearing ms paterno has acknowledged her claims against mr hollander and ms mills are based on various statements or representations made in litigation there is no other claim that is what her allegations are premised on that is why the district the trial court dismissed those claims that is why this court should affirm so specifically we're talking about the third amended third party complaint and that's what brings uh those claims against mr mills and ms hollander count eight is against ms mills count 10 is against ms uh mr hollander again ms paterna has conceded that the allegations she is making relate to uh statements or made by mr mills and ms hollander in the course of their representation in the underlying litigation and that conduct is protected by the attorney litigation privilege the privilege is a complete bar regardless of the defendant's motive or the unreasonableness of the conduct it's not limited to cases in which the allegations concern defamation it's related to any matters or representations made in the underlying litigation that are pertinent to that claim and certainly the allegations that have been made here involve representations pertinent to the underlying litigation any doubts as to pertinence pertinency would be resolved in favor of finding that the communication is pertinent to the litigation but again it seems very straightforward in this particular case and that is exactly why the trial court made the ruling that it did there is no reason for this court to reach a different result it is a classic example of why the litigation privilege exists if there are any questions from the court i'm happy to address them otherwise we ask that the court affirm judge pertine thank you net all right miss weiler thank you uh and that leads us to mr fetterman good morning your honors may it please the court uh my name is jonathan fetterman on i'm appearing on behalf of third party defendant athlete catherine clancy clancy asked this court to affirm the trial court's ruling granting the to a two-year statute of limitations the two-year statute limitation set forth in 13-214.3 b applies to this dispute based on the undisputed facts and i'll start with the undisputed facts because the claims against paterno to clancy are actually relatively straightforward in 2017 clancy prepared notarized and recorded two separate uh deeds including the quick claim deed that added issue in that um in that instrument clancy certified that she was familiar with philip cardez betty k cardez that both were present before her and both signed under their uh as a free act free involuntary act after philip passed away uh there is litigation between paterno and k including a dupage county action and a kane county action the kane county action which was filed as a uh a motion excuse me k filed an emergency motion for injunction and temporary restraining order against paterno that was filed on october 19th 2020 paterno appeared via an attorney on october 29th 2020 in k's motion paragraph 2 she expressly states that philips this estate plan was in dispute and she further attached the quick claim deed as an exhibit to that motion so no later than october 29th 2020 paterno had access to the quick claim deed that contained the information i just discussed in april 2022 clancy signed a uh there's an affidavit dated april 2022 signed by clancy which contained virtually the exact same information it was on the on the instrument in the quick claim deed which essentially was that clancy knew philip and k that they both signed the instrument in front of them under their free will the two-year statute of limitations section 213 excuse me 214.3b applies pursuant to the plain language of the statute as it applies to any action against an attorney arising out of an act or omission in the performance of professional services illinois case law is clear that there does not have to be an attorney-client relationship it simply needs to be any uh any claim in the arising out of the performance of professional services which is exactly what happened here in the preparing notarizing and recording of the quick claim deed uh miss paterno has an undeveloped argument in her briefs has claimed that the discovery rule holds application of the sexual mutation but the relevant inquiry is when the plaintiff has uh the relevant inquiry is not subjective when a paterno knew of her claim it's objective and the question is when the plaintiff has sufficient information to reasonably believe that they have suffered an injury and that it was wrongfully caused and if the answer is more than two years before the dated suit the complaint is timered in schrock verse ungaretti and harris ltd 2019 alap first 181698 the court specifically took notice of numerous filings and other lawsuits that predated the lawsuit uh to find that there was enough information to know of the injury even if the plaintiff did not know the specific identity of those involved in the wrongful conduct the court noted that taking the information from those other suits was not taking judicial notice establishing facts of those cases as miss paterno appears to argue rather taking that information demonstrated that the plaintiff had possession to give him a basis to know or reasonably know of his injury and that was wrongfully caused and that is exactly what happened here in october of 2020 paterno had the quick claim deed with the certification from clancy and it under the objective standard she reasonably should have known to investigate whether she had whether she had a claim against clancy briefly miss paterno also makes a undeveloped argument as the fraudulent concealment but fails to provide any citation legal authority to support her claims and fails to acknowledge that the affidavit contained the exact same information that was in the quick claim we also raised a secondary issue in our brief which was the failure to comply with illinois supreme court rule 341 miss paterno's alleged inexperience with appeals is not a basis for her to fail to comply with the rules unless the court has any questions oh to me there's one other point i wanted to make miss paterno mentioned that there was a finding that she has proven a forgery there is no judicial finding of that related to the unless there are any other questions we ask the court to affirm the trial court ruling justice heddle or justice brettani good question i don't all right uh thank you mr fetterman and that brings us to mr haynes thank you saving the best for last um good morning your honors jeff haynes for employees uh at venice midwest health dba at venice st donahue uh we're here today on a lot of issues before the court i just want to focus on the issues against my clients here this case originated or let me strike that mr card has passed away on july 5th 2020 so that's now almost five years ago this case originated on a lawsuit filed by betty k card as on october 21st 2020 it was a verified motion for declaratory judgment and for other relief and what she was seeking to do was have a restatement of trust declared invalid to have third party plaintiff miss paternal removed as trustee and she was also claiming breach of fiduciary duty related to various property including possession of firearms knives art antiques okay so this really started as a as a as a trust case over property that that is what this litigation was filed as and involved and revolved around for several years until later when in january 3rd 2023 a third amended counterclaim and third party complaint was filed for the first time against st thomas hospice and nurse donahue and at that time third party plaintiff filed the claim for wrongful death and she's made that clear today it's clear from the allegations the complaint is a wrongful death claim that is completely separate and apart from the underlying litigation um and we cited and judge chapman relied upon 735 ilcs 5 2-406 b and what that says is and that's what allows a third party claim to be filed and it says that a defendant may by third party complaint bring in as defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claims against her uh we also cite in their people v brockman which is a supreme court that's 143 illinois second 351 as well as a third district appellate court templeton v bladno company and that's 49 they'll have third 10 57 and what those stand for the proposition is and it's well established under illinois law that third party actions cannot be used to maintain an entirely separate and independent claim against the third party even if it involves the same general facts and while i appreciate that third party plaintiff has claims of fraud and contract allegations and there's there's allegations of the term murder being thrown around that is not derivative of the claims that started this lawsuit and that that's exactly what third party claim is and in our motion to dismiss we cite several other bases that i think this court can rely upon if appropriate as other bases to uphold dismissal of st thomas hospice and nurse donahue but at the very core this is simply not a third party action and i think it's significant in none of the third party plaintiffs or appellants briefs does she ever cite that there's any type of derivative liability the only argument made is that judge chapman mischaracterized this as a medical negligence case and i don't even think that was so much as what he characterized it as just saying that this kind of fell within the purview of 622 which applies to healing art malpractice but it can also apply to allegations of contract tort and otherwise but really the basis of his decision is that this is simply a completely separate action and not a proper third party action so i would ask that your honors uphold dismissal of st thomas hospice on nurse donahue or in the alternative uh look at the other basis such as failures of 622 and i think more importantly failure to comply with the statute of limitations so unless there's any questions thank you very much for your time and the opportunity to argue any questions for mr haynes no thank you the definition thank you sir all right uh thank you mr haynes and that miss paterno brings us back to you uh you have 10 minutes uh in reply thank you um just briefly as with respect to betty k cardoz the cases cited by mr feldman i'll speak to cases that the estate has no other asset but the wrongful death claim um this is a very unique case with very unique circumstances and i could find no case on point with this situation there were almost a half dozen motions petitions uh declaratory actions filed in this case asking dupage county courts to do something in this case regarding appointment of uh either affirming the beneficiary vote remove k cardoz uh who's was determined to afford several documents not just the august 24th you keep saying determined to have forged through the examiner's reports and independent evidence that was later discovered um that's what i'm referring to did any court make that finding no your honor and i didn't mean to imply that there was a judicial finding so your honor may i proceed please okay um in addition there's nowhere in the statute that requires the appointment of the personal representative and in we've even what statute in 740 uh the wrongful death statute 180 um has no requirement that a personal representative be court appointed or in is in this situation or that the personal representative need to be appointed in that statute um there's public policy reasons here that the conflict of interest and the opposing step families certainly should weigh into the consideration to give the family that's on the other receiving end of this the ability to proceed on bringing to light what happened in this case regarding the signing of a hospice contract that forced my father against his wishes off dialysis did you try to open up something in probate we no we did not we we filed the petitions uh in dupage county in this case so um and either they were not ruled upon or they were summarily dismissed along with the other um counts and counterclaims that were filed so we um in reading the case law that council had cited there was it all speaks to uh states that the only asset is the wrongful death claim being brought there is no case on point where the personal representative brought the action um in addition the um the uh for hollander attorneys hollander plant c and mills we're not talking about um something being said during litigation we're talking about affirmative actions taken in order to secure um the 50 interest in 723 67th place that was fraudulently transferred if if philip cardoz died first um and in that sense with when he died first um in these actions katie clancy didn't need to reaffirm what she already stated in her uh verification in the august 24 2017 deed um so there was no indication that the deed was in fact forged um but when she submitted that affidavit attached to the motion to dismiss on april um 13th of 2022 there then we understood that she was trying to help refute the examiner's reports that had determined that betty k cardoz had forged philip cardoz's signatures among several deeds but the august 24th 2017 deed in particular so we didn't know if there would never make those sort of accusations the deed could have stood on its own the the affidavit was done in order to refute the examiner's report gary hollander's statements in that motion to dismiss he filed that took her statements which make no sense when you understand that i live next door to my father are you talking about mr hollander's pleadings yes the august he put in a pleading he put in a pleading he took the statements that katie clancy made and materialized changed everything about those facts in his motion in order to get um to know that katie's clancy's affidavit made no sense when you took into consideration the facts of philip cardoz that i live next door that i'm an attorney that my both my husband and myself are notaries that could have easily walked over gary hollander intentionally took those facts that were verified and sworn under the penalties of perjury and changed them philip cardoz with betty cardoz went to katie clancy's office to um execute the deed which was totally misrepresenting the affidavit he had attached and the facts were so extensive and so varied as to what was stated in the affidavit there was no other um result that you could reach other than that they were intentional and then once that examiner's report and once the discovery of ms clancy's affidavit and billing which omit philip cardoz so it's impossible that if he in fact met with her it would have been included not only in the letter but in the billing and he's not nowhere included in any of it so when that deed the two preceding deeds are are determined by an examiner before we have this other uh evidence it's independent that proves that philip cardoz never went to katie clancy's office that as of her october 5th 2017 the uh letter uh had not met with him and then karen mills in an earlier pleading represents how she how philip's 50 interest by via the um illinois trust uh joint tenancy act also then belongs to betty k cardoz she submits to the court i'm going to interrupt you for a moment justice uh hedler justice pertani do you have any additional questions on the attorney representation question no i do not let me ask you how what is your theory for why your third party complaints against emits and uh ms donahue are in any way derivative of betty's deck action how are we getting there well we believe that that betty k cardoz couldn't have executed the contract that forced my follower off dialysis without amita and um joanne donahue that the derivative action um that our counterclaims and third party complaint were independent of that so it comes from the counterclaims that were filed above for amita and for you to file a third party to for you to get these people in as third party defendants they must somehow be liable for your for what you're being alleged to have done vis-a-vis betty so unless you can show that somehow they're liable for that they have no they have no business being in your lawsuit i guess that's the question i want you to answer well again this is very unique set of circumstances but for amita my father would still be living so that they it grows out of the fact that the betty cardoz was only able to cause the general could you tell us what a third party defendant is the third party dependent is a party not named in the action so the counterclaims are against betty cardoz and third parties were brought in ancillary to the action um is aiding and abetting and conspiracy so that that that's why the aiding and abetting um betty cardoz's actions in the wrongful death of my father is why amita was brought in because without them she couldn't have done it so and understanding that after um years of litigation and the that she was allowed to sign the contract because we didn't understand how she did it so but for amita being present on june 29 2020 my father would still be living today that's why they're named it wasn't a medical malpractice it was in aiding and abetting in conjunction with the wrongful death action may i proceed to clarify two other points um with deborah roper that's misstatement of the evidence there was never a dismissal of 21 mr 310 it was consolidated and merged into 20 mr 923 on august 24 2021 the court gave leave to my then attorney to determine how to proceed under the both cases and going forward and that's when the first counterclaim and third party complaint was filed with the same counts against deborah roper being stated my this paterno your time is up if you could conclude please yes your honor and i just would like the court to just um consider the public policy arguments and the fact that the fraud of these attorneys is against the illinois professional rules of conduct which carves exceptions for reporting fraud and in this case the court should at least consider that as well as the public policy arguments under the wrongful death action and the elder abuse action which by the way was not addressed by mr feldman thank you your honors any uh follow-up questions by my colleagues i just had one whose name is the representative of the estate in the thank you all right uh the court uh thanks all the parties for spirited argument we will take the matter under advisement and render a decision in due course